Good morning, Runners. I'm Colin Weed, attorney for Mr. Barboza and Ms. Alboran. There are... Oh, excuse me, I would like to reserve three or four minutes. You'll need to monitor it yourself, but we'll try and help you. Okay, thank you. There are three issues addressed in the brief, and the three issues that I want to address again today in a slightly different manner. The first is the requisite proof of intent that's required under the code section. The second is the requisite proof of damages. And the final one is whether or not there's material conflicting evidence that would lead to a denial of a motion for summary judgment. As to the first two, requisite intent, I need to address a case that has not been addressed in the brief, and that is the Ching Lang case. And with respect to the requisite proof of damages, I want to address the Brown case, both of which, of course, are the foundations of the opinions of the trial court and the BAP below. First, however, I want to make a point that I think this is a more than average case. This is a significant case. It deals with an important issue, and that is simply that a non-dischargeable judgment of a million dollars for a person of average means is the financial essence. Now, that's important to the person, of course. It's important to society as well, because following that judgment, that person is out of the economy. They have nothing else to do but go underground. So in making the decision that a judgment of that magnitude for a person of that means, it's a significant decision and one that bears scrutiny. Now, this is not simply my own notion. This is supported by the constructional requirements in order to prove non-dischargeability. The first of these, there are four of them, is that exceptions to discharge are to be construed strictly against creditors and liberally in favor of debtors. And the second is exceptions to discharge should be confined to those plainly expressed. Statutory construction, of course, begins with the language of the statute itself. That language is in the non-pair decision of the Supreme Court and is repeated in just about every case that deals with this issue. And finally, Congress intends the words in its enactments to carry their ordinary contemporary common meaning. That's out of the Pioneer case, the United States Supreme Court case. Let me turn next to the issue of subjective intent, which is required. The seminal case, of course, that the court needs to be concerned with is the Geiger case, the U.S. Supreme Court case, which said very plainly that acts done with actual intent to cause injury. That is the test. Ninth Circuit then came down after that case with the suitcase. In this edit, it ruled correctly that what the Supreme Court was saying is that subjective intent to cause injury is what is necessary to prove. Then, of course, the court added an alternative test, and I've taken considerable issue with that alternative test, which I suggest is simply a dicta that ought to be corrected. And that alternative test is subjective knowledge that injury was substantially bound to occur is the test. I'm sorry, that's the language that comes out of sue that you think that this panel is free to ignore? Well, I don't know, Your Honor. I'm well aware of the court's policy that any reversal of a case of another panel needs an in-bank hearing. I would suggest that this dicta was absolutely unnecessary to sue and that what the court ought to focus on is the first test. If we disagreed with you, is the second test met? Let me address that. I believe the second test was simply not met in this case. The proof in the case consisted of a judgment of the district court where a jury found willful infringement of a copyright. Under the instructions by the district judge, the jury could have found willful infringement by simply finding that there was reckless conduct. That is simply short of intent. So the trial judge, Judge Bowie, and the BAP, I think, both recognized something more was required. Now, under the alternative test, the focus appears to be simply one word, and that is knowledge. Now, in this case, the additional evidence that was submitted in order to show this bad knowledge was that the defendants, the appellants here, well knew of the copyright interest that new form had. That is the only knowledge that we're talking about. Now, the evidence is clear because of a letter that was written both by new form to my clients and then by my clients back to new form that my clients knew about their copyright interest. However, in the letter back, they pointed out that they had bought a million copies of the Indy and Maria videos. And they bought them properly, and the district court had found in a motion for summary judgment that that purchase was entirely proper and that they owned those videos and were entitled to sell those videos. So the fact that they knew about new form's acquired copyright interest had nothing whatever to do with their intent in going forward and selling those videos that they had lawfully acquired. So I submit that under the alternative test, proof was simply not made of adequate intent. Now... Well, if they were entitled to sell those copies, why did they lose the copyright suit? The copyright suit resulted in a judgment for 10 instances of copying. Now, while my clients contested that, we're stuck with that judgment. Reckless copying. Okay, this is the stuff that was sent over to New Reel. And I didn't quite understand whether New Reel was doing the copying for them or whether New Reel was just providing the blanks which they were then copying in their garage. There was some evidence that your clients had a whole bunch of copying machines in the garage. There is evidence. That they ordered a bunch of blank tapes from New Reel. And the inference then becomes they took the blank tapes from New Reel and copied these movies in their garage. That is an inference. However, it's belied by the fact that we're talking now about Indy Maria tapes. They had no need to copy Indy Maria tapes. They had a million of them. Right, but you lost that suit. Right? You lost that suit in the district court before you got to the bankruptcy court. What they lost is unlawful copying. Okay, but who's doing the unlawful copying? I'm missing something here. I've got to disconnect you someplace. Who was doing the unlawful copying? Well, my clients allegedly had them copied. Well, not allegedly. We have to accept it as fact now because you lost a nearly a million dollar judgment on this. So you have to give up at some point, counsel, I think, on that one. Your clients lost that suit. So they illegally copied movies, the 10 Indy Maria movies. And they would have had to have done it after a time when they were on notice from New Form that New Form had an exclusive right to those movies. Is that correct? That is correct. In order to sustain the judgment that they lost in the district court. That's right. Okay. If they lost that case, then how can we possibly conclude other than that they intentionally did this? They did it knowing that somebody else possessed a right to the movies, and yet they persisted in doing it. It doesn't matter whether they had inventory that they thought they were entitled to sell. Your clients were found guilty of copying. I understand that. The first point to be made is that the jury finding was based on recklessness at most. It has to be assumed from the instruction that was given. So that's not intent. That is an alternative. That's a possibility because the jury was given an or instruction. That's right. So Judge Bowie recognizes at the trial that something more was necessary. Right. That's why he declined to rule in the first instance for New Form. Right. He then accepted further evidence and then found against your client based on the evidence that he heard himself. The only further evidence was he found knowledge. And the only knowledge that he could have possibly found that they did find is that they knew about the copyright. And my point is, knowing about the copyright has nothing whatever to do with their intent to cause any injury. Knowing about the copyright, they knew that they were free to sell the videos they had. Right, but that's not why your client was found guilty. They were found guilty of copying. They weren't free to copy the movies. They weren't free to copy the movies, and they knew at that time that somebody else held exclusive rights. That's not reckless. It doesn't matter what the instruction was in the copyright suit. That's not possibly reckless behavior. It's just intentional. What I have to, I want to focus the court's attention on is this issue of intent. Now, I'm not. I'm pretty focused, counsel. Well, I'm trying to refocus then. I'm not pleased at all with the trial court judgment. It's a difficult hurdle to pass. On the other hand, we're dealing with an entirely different kettle of fish now, and we're talking about dischargeability. The test in dischargeability is not whether they recklessly or even with knowledge of the copyright copied. That's not the issue. The issue is what intent they had in doing that and whether that intent caused injury. There is no proof, whatever, of any sale of any video. There is the judgment of copying, which I guess we're stuck with. On the other hand, I respectfully suggest that that judgment alone does not preclude evidence of intent. Intent to do what? I'm sorry? Intent to do what? Intent to cause injury to property. As the Supreme Court says and the suit case says very clearly, there has to be a specific intent not to do the act. So in this case, perhaps they intended, according to the district court judgment, to do some copying. But did they intend to cause injury? That's the issue. Well, if you know that somebody else has got a copyright and you intentionally copy materials that you know are copyrighted, how could you not intend to cause injury? Well, I think it's a leak of faith to suggest there was an intent to cause injury. First of all, mere copying by itself is not causing an injury. Much of the difficulty that I have with this, Your Honor, is the fact that there is considerable conflicting evidence. We have the evidence against us, which is that judgment. But there's an awful lot of other evidence as well. My last point went to the propriety of the summary judgment where there is conflicting material evidence, which I'll address in a moment. But on this issue of subjective intent, let me point first of all to the suit case and what went on there. As the court is aware, Sue was a driver of a bus and went barreling down a steep street in San Francisco at a high rate of speed through an intersection with a red light and plowed into a car. The car then careened into the plaintiff who was injured. Now, this court said properly you've got to show subjective intent. And then it went on unnecessarily, I think, to say that subjective knowledge would do the job as well. But under those facts that I just indicate, I think that Sue wins under either of the tests. Now, what might be admitted in evidence in order to show subjective intent? Well, I suggest if you could show that Sue was a terrorist rolling down the street for the purpose of causing injury, now you have made your case. Now, the alternative test is a dangerous test because it simply allows the court to make a finding of non-dischargeability too easily. It circumvents a strict analysis. Now, I don't know what happened in the Sue case when it went back to the court. It was remanded for a determination of specific intent. But I suggest that the case could have gone against Sue had there been some kind of additional evidence. And I think that's analogous to this case as well. The case, we need to look at other evidence other than simply that judgment to see whether or not they had a specific intent to cause any injury. What is the conflict? I'm sorry. What's the triable issue on intent? What's the evidence that creates a triable issue on intent that you're saying makes sense? Well, the first bit of evidence, of course, is the judgment. And we're stuck with that other than the fact that there is other evidence, which I think is admissible. But that's the first element. The next element in order to comply with the alternative test is to show some sort of a knowledge from which you would conclude that there must have been intent. And I suggest that that knowledge isn't there. They sold India Maria videos. They had a right to sell them. They knew of New Form's copyright interest, but they had no intention at all of selling India Maria videos that had been copied, allegedly copied, from New Form. Right, but they copied. They copied films. That's the problem.  I don't know that the law is particularly clear in this case. What is the extent, what is the binding effect of whatever that judgment was? I think it's relevant. There's no question about that. But I think other evidence is equally relevant but ought to be considered by the trier of fact as to whether or not the requisite intent is there. Now, the requisite intent under 523A6 is not the same as what is required under the copyright laws. It's completely different. It's a much more stringent, much more burdensome test. And I suggest that evidence that addresses their intent, that tends to show that they never intended injury, is relevant. They were just copying this randomly, but they had no intention of injuring anybody by copying it? Well, let me point out the other evidence. The other evidence is that they didn't do that copying. I realize that the jury found that they did. It wasn't at the trial. I think you're stuck with that one, counsel. They did do the copying. I think we have to accept that. I'm also entitled to present to the trier of fact other evidence that goes to the issue of intent. It's a collateral attack on a judgment. Well, that could be said. Did you take an appeal in the copyright case? No. No, I was not involved in the copyright case. It came to me after the fact. Counsel, you have three and a half minutes. I don't know if you have other points that you wanted to make. Judge Canby, were your questions answered about the conflicting evidence? I think I know. Okay. Counsel, I don't know if you've got additional points, but you're welcome to save this time if you wish. Well, I do. I think perhaps it's one of the most important points to be made, and that is this question of injury and proof of damages. Now, the BAP said that proof of damages is a categorical injury, and we don't have to worry about that. The bankruptcy judge, Judge Bowie, said he was fairly uncertain about this, but at least there was an injury to the public, and that was sufficient for him. I don't think that's the plain meaning of the statute. The statute says a claim for injury to property. Now, very quickly, the Braun case, considered for the statutory damages, were non-dischargeable where there were no actual damages, and it relied essentially on the Zellis case. The Zellis case said that the court-ordered sanctions, which were not compensatory, were not dischargeable. Today, I think the Zellis would be decided under a different section, the one that follows 523A6, and that is 523A7, which says, To the extent such debt is for a fine, penalty, or forfeiture, payable to or for the benefit of a governmental unit, and is not compensation for actual use. Now, there's no need for A7 if you construe A6 so broadly as to include fines and penalties and forfeitures and the like. So I think that A6 has to be read in a much more restrictive manner, and that damages must be proved. There are no damages proved in this case. The award is a statutory penalty. There were no damages at all, and therefore I suggest that it ought to be reversed on that basis. And the final point is, and this is covered, I think, adequately in the brief, summary judgment was not appropriate because there was additional evidence that should have been considered by the trier of fact in a trial and not on a summary judgment. Thank you for your time, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. Richard Weiner on behalf of New Form, Inc. This is a case of theft, that there were ten classic Spanish-language movies, the India Maria movies. There is no dispute, as Your Honors have indicated, that there was copying. There was actual copying. And what Judge Bowie as well as Judge Cooper in the lower court had in front of them on the record, undisputed, is that there was a September 3, 1999 letter giving him notice. Then you have followed, after receipt of that letter, actual copying by Real Pictures Productions in San Diego, which was a tape replication, duplication facilities of VHS and DVD tapes. At that time it was VHS duplication, that it was an overflow facility. There is no dispute that Lucia Albaron and the debtors, in this case, ordered those duplication of the India Maria movies after receiving the September 3 letter. And then, to add insult to injury, on September 17, offered to sell the tapes that, as far as we contended at trial, offered to sell those tapes back to my client for a fee. The jury unanimously decided that there was actual copying. Defendants argued that they didn't copy. They argued this theory that Lucia Albaron's brother, Miguel, made up this whole thing with the nephew, Francisco. All that was argued at the district court level in the jury trial. They had a jury instruction which identified not only the first sale doctrine, but also with respect to an innocent infringer. The jury did not believe the defendants. They did not believe the debtors. There is a specific jury instruction which identifies the actual infringement, and it defines it, and it's at, on the excerpts of record, page 141. If you find, by preponderance of the evidence, that defendant Lucia Albaron reproduced or in any manner duplicated each or all of the ten India Maria pictures at any time between May 15, 1999 and present, you are instructed to find that the defendant infringed plaintiff's copyrights for each India Maria picture produced. That is absolute clear that the jury found actual infringement. But they could have found actual infringement between May 15, 1999 and September 3, 1999 when New Form advised Albaron and Barbosa that they might be in violation. So, in other words, they could have, the jury could have found that they were copying before they knew of New Form's exclusive rights. That's a strict liability statute. Your Honor, there was no evidence at the district court level of any copying until after, excuse me, the September 9, 1999, I believe was the first. I could be wrong about that, but that was a, in the real picture production file, the original file was introduced at the time of trial and it was also… Why would the district court have given the instructions that allowed the jury to find something between May 15 and September 3? That was, May 15 was the time that New Form acquired it. Sure, I understand where the date came from. Right. But if Barbosa had no idea that somebody else had exclusive rights to the movies and they purchased this inventory, why would the district court want to allow the jury to make that kind of a finding? Again, that makes the violation strict liability and would put this in a very, very different posture. Well, Your Honor, the jury instruction was modeled after the 9th Circuit model jury instructions. That may be fine for copyright, but in terms of finding an intentional violation of the Act, how do you find an intentional violation of the Act if Barbosa doesn't even know for another four or five months that somebody else has got exclusive rights to the movies? Because, Your Honor, I'll answer that directly. There was direct evidence that she never, at any time, had the rights to duplicate, ever. She admits that. She had the right to the inventory that she purchased. And that, I'm not even going there today because that was completely disputed at the time of trial and Million Dollar Video, who she claimed to have bought the rights from, in or about after, I believe, May or June of 1999, Newforms sent a cease and desist letter to Million Dollar. Their general counsel responded, who testified at trial, that there was a couple hundred units of each of the movies in their inventory and they will just sell them off and that will be it. That was introduced at the district court trial, that there was only a couple hundred units. So when Lucia Albaron gets up there and says that they have thousands of units of these India Maria movies, the jury is sitting there having just heard from the general counsel of Million Dollar Video that several months earlier there was only a couple hundred units left and they weren't manufacturing any more. Excuse me, I didn't interrupt you. No, no, please, Your Honor. Let's assume that they did make the copies. Let's assume that the jury was right, they made the copies and they knew that making those copies was in violation of the copyright. Yes. Let's start with that assumption. Yes, Your Honor. The determination in that copyright case on whether or not it was done knowingly or intentionally was for the purpose of determining whether or not they could recover statutory damages. Isn't that essentially the reason for producing that testimony? Either you have a choice of actual or statutory. Right. But you can get the statutory since it's difficult sometimes to prove exactly how much damage. The purpose of establishing willfulness goes to whether or not they can recover the statutory treble damages. Doesn't it? As to the punitive damages above $30,000, yes. If I recall, the punitive damages aspect was not granted. It was the triple damages that was granted. Isn't that not accurate? That is correct, Your Honor, above $30,000. All right. So there's a determination in that level for the purpose of the copyright case to determine whether or not the statutory damages are what's going to be addressed here. Yes. That was the determination of the knowingly, intentionally, what have you. Yes. When we get to the issue in the bankruptcy court of non-dischargeability, we're dealing with a different statute, are we not? That statute requires for non-dischargeability that there be willful and malicious. There was no determination about maliciousness on the intent in the case involving the copyright, was there? I believe there was, Your Honor, by the fact that... That they knew it? I believe there was based on the following, that when you admit that you don't own the rights,  I don't own the rights to duplicate them, I don't own the rights, any rights to them, and then it is proved that even though I don't own the rights, I duplicate them, that act in and of itself is not like, for example, Geiger, that you have a medical malpractice where you have medicine being prescribed or you ensue where you have a situation of automobile situation with the bus. You have a situation of you can't have... And Braun says it much more eloquently than I could ever say, where it says the following, and this is at 327 Bankruptcy Reporter at 451. While a medical procedure can result in either healing or harm, and a physician may cause harm by negligence, copyright infringement is categorically harmful activity. One cannot commit intentional copyright infringement and through his negligence cause financial harm in the copyright holder. Rather, harm necessarily flows, follows from the act of infringing, regardless of the infringer's state of mind when creating the infringing material. But if there is no actual damages and all you're getting is statutory damages... Yes, Your Honor. ...then there is no actual harm. There's only statutory harm. Isn't that correct? Is that correct or no? I believe there is actual harm. You have intellectual property that's being harmed because somebody is copying your property. It's like trespass or conversion. It's an intentional tort. It's a harm. The damages that you have a choice to do actual or statutory is another situation because everybody acknowledges that the infringing pirators are not going to give you all of their sales, so it's very difficult to prove damages. Okay. Let me ask you then. If Congress said, in order to get non-dischargeability, we have to have willful and malicious, are you saying that whenever there is a finding of an intentional or knowing violation of the copyright law, that is equivalent to willful and malicious? Absolutely. So why then would Congress require willful and malicious, and not just any time you have an intentional violation of the copyright law? It's not dischargeable. I can't speak with respect to the legislature. I can look to the case law, which interprets it where you have In re Brawn or you have the Ching case. Let's go to the Geiger case, and I realize it deals with medical things, but the point that the Geiger case makes, it seems to me, is fairly clear. What you look for is whether or not there is an intent that they act with the intent to do harm. In a copyright case, it seems to me that the act could clearly be to make money. It wasn't to harm somebody. It was to make money. That was the motivation, and the distinction, it seems to me, that Geiger clearly makes, and I think even the Ninth Circuit decisions try to make the distinction that we are not looking here to whether or not they knew or intended to do the act that would cause harm, but whether they intended to cause the harm. That was the motivation for doing the act. Isn't that the distinction between the requirement for non-dischargeability and the requirement for knowingly violating the Copyright Act? Your Honor, my understanding is this, is that Geiger talks to about that you have to show intent, as you've indicated, and that the cases identify and make a distinction with respect to acts of negligence that could be construed, it may be negligent, it may be intentional, and if the issue is negligence, then it is obviously not dischargeable. Then when you go to the brief of counsel, he cites these cases, the McGee case, which talks about a cave-in with respect to a mine, the Vizzini case, which is a failure to provide workers' comp insurance, and the In Re Matter case about a hair salon, an epileptic that is let go. These are all cases dealing with issues that you could look at it and say, you know, I don't know if they acted intentionally, or I don't know if they acted maliciously, because it's a negligence issue. For copyright, for copyright, you have a situation where you acknowledge you don't own the rights, then you copy them. That is a harm. That is a harm to the intellectual property rights. It's like a piece of land, and somebody comes on my land... Harm is the harm intended. I'm sorry? What Geiger keeps saying, and Sue says it also, is it's not enough that you intend to do the act that causes the harm. You have to intend to cause the harm. I agree. And it seems to me that what you keep emphasizing is they knew they were violating the Copyright Act. They knew they were copying when they shouldn't. That's true. And that caused some harm. But it seems to me Geiger says it's not enough to knowingly do an act, intentionally do an act. We're not talking about negligence. Geiger says even if you intend to do an act that causes harm, that's not good enough. You have to intend to cause the harm. And my position, Your Honor, respectfully, is that when you don't own something, and you take it from somebody, you intend to do that. It's not a negligent act. It flows from it. There can be no other interpretation that when you don't own something, and you take somebody else's property from them, like going up to me, and you take my wallet because you want the money in my wallet, you have harmed me. You've come up to my person, you have battered me, and you've taken something from me that belongs to me. Because it's an intellectual property right, it doesn't change that. And what counsel is, and their argument is, is that any time somebody is a pirater of movies, or any copyright, and they take that, and for purposes of getting money, that all they have to do, whether it's a $50,000 judgment or whether it's a million dollar judgment, all they have to do is file bankruptcy, and they're free. That is the policy that is flowing from this argument. That copyright infringers, piraters around the world, don't worry. If you go ahead and pirate, just file bankruptcy, file Chapter 7, you'll be fine. Because they won't be able to show that you harmed, because knowing that you took somebody else's copyright, and for purposes of selling and making money, don't worry about it, that's not harm. And you're saying that if they do violate a copyright, unless it was accidentally, that automatically precludes them from getting discharged? Absolutely, and actually the jury instructions provide for innocent infringers. I'm talking about innocent infringers, I'm talking about in all other circumstances, except for innocent infringers, you say that it's automatically non-dischargeable? Right, I am, Your Honor. And you think that's what the Act requires? Absolutely. And you think that's what Geiger indicates that the Act requires? I believe that it is consistent with Geiger. I believe it is absolutely considered consistent, as reflected in the Chain case, when you have somebody who doesn't even know. In that case, he is the executive. He doesn't even know that, arguably, in the record, that he doesn't know the infringing is even happening. He is still held vicariously liable because of his relationship with being able to supervise and control the infringing activity. In that case, he didn't even know for a fact. Your Honor, I again would request that for purposes of protecting all those people that have copyrights, when you have an intentional act that amounts to stealing, that the piraters are not allowed to escape by virtue of the Bankruptcy Act. Thank you. Thank you, counsel. Mr. Weed? Thank you, Your Honor. The crux of this case, I think, really falls on the language of the statute when it talks about a claim for damages for injury to property. What are we talking about? Are we talking about a categorical injury, whatever that means, as defined by the BAT?  Which are words that were used by Judge Bowie. I suggest that's simply wrong. We're talking about real claims for money for real damages, injury to property. Now, to clear up Your Honor's inquiry, from my vantage point, again, the judgment by the jury, the verdict by the jury, and the judgment by the court in the district court was arguably for reckless conduct. Reckless conduct is not the sort of intent that is talked about in 523A6. It talks about, according to the Supreme Court, specific intent to cause injury, not to do the bad thing, which I have to concede I'm stuck with. There is a jury verdict that my clients knowingly violated copyright, I suppose. But did they intend injury? Now, Congress could very easily have said, but it has not, that statutory damages are not as chargeable. It has not said that. And I think the judgment of the BAT goes way beyond what the statute says. And especially when you read that statute in conjunction with A7, which specifically makes penalties and fines not as chargeable, the logical inference is that they would not be not as chargeable under A6. A6 requires proof of specific intent to cause injury, and a judgment for damages that have been caused is not as chargeable. A statutory award, while maybe a good idea from the public standpoint, maybe a good idea from the industry standpoint, which, of course, has a very strong lobby, is simply not sufficient for purposes of not as chargeability. I think that concludes my argument. Your Honor, if there are other questions, I can address. Thank you very much. Thank you. I appreciate counsel's argument. Barbosa v. Newform will be submitted. That concludes today's oral argument calendar. Court stands adjourned.
judges: Canby, Bybee, Hunt